UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
PETER COLLINS,                       :   08 Civ. 1936 (PKC)(JCF)
                                     :
              Petitioner,            :        REPORT AND
                                     :        RECOMMENDATION
      -against-                      :
                                     :
DALE ARTUS, Superintendent,          :
Clinton Correctional Facility,       :
                                     :
              Respondent.            :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE P. KEVIN CASTEL, U.S.D.J.:

    Peter Collins brings this petition for a writ of habeas corpus pursuant to 28 U.S.C § 2254, challenging his conviction in New York State Supreme Court, Bronx County, for manslaughter, reckless endangerment, and criminal possession of a weapon.  Mr. Collins argues that: (1) the trial court deprived him of a fair trial by admitting hearsay; (2) the court violated his due process rights by refusing to instruct the jury on the defense of justification; (3) there was insufficient corroboration of accomplice testimony; (4) his manslaughter conviction was against the weight of the evidence; (5) the evidence of his guilt was insufficient to support his conviction; and (6) he received ineffective assistance of counsel at trial because his counsel failed to request a missing witness charge.

    For the reasons set forth below, I recommend that the petition be denied.

Background

    A.   The Crime

In August 1996, a gang of men led by Emanuel Gullet "jumped" Mr. Collins' friend, Danny Hernandez. (Tr. at 1717-18, 1817-19). Approximately a week later, on the evening of August 16, 1996, Mr. Hernandez, Mr. Collins, Francis Perez, Robert Sackey, and Henry Ramirez[1] decided to seek revenge. (Tr. at 1718-19, 1726-27, 1819-20). Mr. Hernandez knew where Mr. Gullet was located that night and informed his friends that he planned to "go over there right now [and] fight him one-on-one." (Tr. at 1727, 2180-81). After insisting that "[w]e ain't going over there without no guns" (Tr. at 1727, 1732, 1827-28, 2182), Mr. Collins obtained a loaded nine-millimeter handgun to bring with him to the fight.[2] (Tr. at 1735, 2188-91, 2240-44). The petitioner tucked his weapon under his shirt, securing it in his waistband. (Tr. at 2189-91, 2244).

The men proceeded to Grand Concourse between Rockwood Street and 172nd Street in the Bronx, where Mr. Gullet was engaged in a sidewalk game of dice. (Tr. at 1180-86, 1729-39, 1829). A group of approximately fifteen people were gathered near 1515 Grand Concourse to watch or participate in the game. (Tr. at 1180-86,

---

    [1] Mr. Ramirez was later tried as the petitioner's co-defendant.

    [2] Mr. Ramirez was also armed; he had a loaded thirty-eight millimeter handgun with him that evening. (Tr. at 1304-08, 1334-35, 1729, 1836, 2185-87).

1492-93).  Mr. Hernandez approached Mr. Gullet and asked, "Remember me?"  (Tr. at 1191-92, 1495-96, 1739, 1829-30).  In response, Mr. Gullet jumped up and began to run, and Mr. Hernandez chased after him.  (Tr. at 1497, 1524-26, 1739, 1830).

Suddenly, a gun shot rang out, followed by several more in rapid succession.  (Tr. at 1500-02, 1740-41, 1830-31).  They came from the direction of Rockwood street.  (Tr. at 1198, 1501-03, 1558, 1741).  One witness, Mr. Perez, saw Mr. Collins with a gun near the corner of Rockwood Street and Grand Concourse.  (Tr. at 2201-04).  Mr. Perez observed the flash of three or four gunshots from the petitioner's gun.  (Tr. at 2203).

One young man, Dietrich Little, died from the shooting; several others were injured, including a woman named Passion Baker.[3]  Mr. Little's autopsy showed that he had been struck in the neck by a nine millimeter bullet.  (Tr. at 2111-16, 2602-05, 2617).  The police later recovered several discharged nine millimeter shells near the intersection of Rockwood Street and Grand Concourse.[4]  (Tr.

---

[3] Keith Williams sustained injuries from a gunshot wound in his chest (Tr. at 2517-20, 2632), Rajab Asep from a gunshot wound in his hip (Tr. at 2483, 2497-98, 2631), and Ms. Baker from a gunshot wound in her left elbow (Tr. at 2632).  Leo Watson almost died from a gunshot wound to his face.  (Tr. at 2127-33).

[4] Although the discharged shells were all fired from the same gun (Tr. at 2538), law enforcement agents could not determine whether the bullet recovered from Mr. Little's body was also fired from the same weapon (Tr. at 2553-55).  The thirty-eight caliber bullet recovered from Mr. Asep's stomach, however, was definitively shot from a different weapon.  (Tr. at 2543, 2556).

at 2045-52, 2070-75, 2333).

Early in the morning of August 17, 1996, police found the petitioner at Bronx-Lebanon Hospital, being treated for a gunshot wound in his groin area.[5]   (Tr. at 2491-94, 2643-44).   During interviews with law enforcement officials on August 18, Mr. Collins admitted that he was at the scene with a handgun[6] in anticipation of a fight between Mr. Hernandez and Mr. Gullet.   (Tr. at 2643-45). According to the petitioner's statement to the police, he observed a black male with an automatic weapon shooting in the direction of Rockwood Street and Grand Concourse.   (Tr. at 2644).   When he saw this, Mr. Collins allegedly attempted to pull his gun out of his pants but accidently shot himself in the groin.   (Tr. at 2644).   The petitioner denied causing injury to anyone other than himself.   (Tr. at 2644).

Soon after his interviews, Mr. Collins was arrested for possessing a weapon.   (Tr. at 2629, 2710).   On February 27, 1997, he was indicted in connection with the shootings.   The grand jury charged him with acting in concert with Mr. Ramirez to commit a number of crimes related to the events of August 16, including second degree murder, first degree manslaughter, attempted murder,

---

[5] According to the treating doctor, the injury apparently occurred when a gun discharged from the petitioner's waistband into his genitals and left thigh.   (Tr. at 2491-94).

[6] The petitioner claimed, however, that his gun was a twenty-two millimeter rather than a nine millimeter.   (Tr. at 2643).

assault, and reckless endangerment.

B.   <u>Trial and Sentencing</u>

In February and March 1999, the petitioner was tried before a jury in New York State Supreme Court in the Bronx.[7]  Justice Robert L. Cohen presided over the trial.  The prosecution presented numerous witnesses, including Mr. Hernandez, Mr. Perez, and Mr. Sackey, all of whom were with the petitioner earlier on the evening of the shooting.  The prosecution also introduced testimony from several of the victims and from a variety of law enforcement officials and physicians.  The defense called no witnesses.

Mr. Collins, through his counsel, objected to hearsay testimony offered by a witness named Francisco Duran, but the objection was mostly overruled.  (Tr. at 1853-54).  Accordingly, Mr. Duran testified that on August 15, 1996, the day before the incident, the petitioner told him that some black men had recently attempted to steal from Mr. Hernandez and exclaimed, "If I was [Mr. Hernandez], I would go over there and I would shoot those Morenos."[8]  (Tr. at 1864-65).

After the prosecution had presented its case, Mr. Collins moved for dismissal, arguing that the prosecution failed to establish a prima facie case with respect to each count of the indictment.  (Tr.

---

[7] The petitioner was tried jointly with Mr. Ramirez.

[8] "Moreno" is Spanish slang for a black person.  (Tr. at 1865).

at 2746).   His attorney expressly challenged only the proof presented on the element of intent, arguing: "the People have failed to make out . . . that my client acted recklessly and with intent to cause serious physical injury and acted with depraved indifference to human life." (Tr. at 2746).   The court denied this motion.   (Tr. at 2747, 2754).   Thereafter, the court also rejected the petitioner's request to deliver a justification charge to the jury.   (Tr. at 2766-67).

Ultimately, Mr. Collins was found guilty of first degree manslaughter for killing Mr. Little with the intent to inflict serious physical injury.   (Tr. at 2981-85, 3173-74).   He was also convicted of reckless endangerment in the first degree for shooting into the crowd gathered at 1515 Grand Concourse.   (Tr. at 3027-31, 3177).   Finally, the petitioner was found guilty of criminal possession of a weapon in the second degree.   (Tr. at 3031-34, 3177).   He was acquitted, however, of all other charges.   (Tr. at 3173-79).

Mr. Collins was subsequently sentenced to consecutive terms of imprisonment of twelve and one-half to twenty-five years for the manslaughter conviction and two and one-third to seven years for the reckless endangerment conviction.   (Sentencing Transcript dated April 13, 1999 ("Sentencing Tr.") at 23-24).   In addition, he was sentenced to an indeterminate term of seven and one-half to fifteen years for the weapons conviction, to be served concurrently with his

sentence for manslaughter.   (Sentencing Tr. at 23).

    C.   <u>Subsequent Proceedings</u>

<u>      </u>Mr. Collins appealed his judgment and sentence to the Appellate Division, First Department.  On appeal, he raised the same grounds that he advances today.  (Brief for Defendant-Appellant ("Def. App. Brief"), attached as Exh. 1 to Affidavit of T. Charles Won dated July 14, 2008 ("Won Aff."); Corrected <u>Pro Se</u> Supplemental Brief for Defendant-Appellant ("Def. Supp. Memo."), attached as Exh. 2 to Won Aff.).   The Appellate Division found that the hearsay statement was properly admitted, that a justification charge was unwarranted by the evidence, and that the defendant did not receive ineffective assistance of counsel because he was not entitled to a missing witness charge with respect to Passion Baker.  <u>People v. Collins</u>, 301 A.D.2d 452, 452-53, 755 N.Y.S.2d 365, 366 (1st Dep't 2003).  The court also held that the petitioner's "verdict was not against the weight of the evidence."  <u>Id.</u> at 452, 755 N.Y.S.2d at 366.  The court declined to review the petitioner's other grounds, deeming them to be unpreserved.  <u>Id.</u> at 453, 755 N.Y.S.2d at 366.

    Proceeding <u>pro se</u>, the petitioner then applied for leave to appeal to the New York Court of Appeals.  He submitted two letters in support of his request.  In the first, he simply listed, without explanation, the grounds previously advanced on appeal.  (Letter of Peter Collins dated Sept. 3, 2003, attached as part of Exh. 4 to Won Aff., at 2).  In his second letter, Mr. Collins elaborated upon his

claims.   (Letter of Peter Collins dated Sept. 28, 2003 ("Collins 9/28/03 Letter"), attached as part of Exh. 4 to Won Aff.).  He also expressly declined to "seek leave to appeal the First Department's rejection of the 'weight of the evidence' claim raised by appellate counsel."  (Collins 9/28/03 Letter at 2 n.2).  Leave to appeal was denied.  People v. Collins, 1 N.Y.3d 570, 775 N.Y.S.2d 787 (2003).

Thereafter, Mr. Collins sought to have his conviction vacated pursuant to New York Criminal Procedure Law ("CPL") § 440.10, alleging that he was denied the effective assistance of counsel at trial on grounds different than the one he raises in his instant petition.  Following a multi-day evidentiary hearing, the Honorable Robert G. Seewald denied the petitioner's motion.  People v. Collins, No. 1408/97, 2007 WL 1470388, at *24 (Sup. Ct. Bronx Co. April 9, 2007).  Mr. Collins sought leave to appeal this determination, but his application was denied in August 2007.  (Petition at 4-5; Won Aff., ¶ 10).  He filed the instant petition for habeas corpus relief shortly thereafter.

Discussion[9]

---

[9] Prior to passage of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), factual findings made by a state court after an evidentiary hearing were presumed correct in a federal habeas proceeding, but federal courts were not required to defer to state court determinations of law and of mixed questions of law and fact.  See Thompson v. Keohane, 516 U.S. 99, 107-12 (1995); Brown v. Artuz, 283 F.3d 492, 497 (2d Cir. 2002).  Under the AEDPA, however, a writ of habeas corpus may not issue "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

1.  Admission of Hearsay

The petitioner contends that the trial court erred by admitting hearsay, thereby depriving him of a fair trial.  (Petition at 7; Def. Memo. at 24-34; Collins 12/28/03 Letter at 1-2).  Over the petitioner's objection, the trial court allowed Mr. Duran to testify that, the day before the shootings occurred, the petitioner told him, "If I was [Mr. Hernandez], I would go over there and I would shoot those Morenos."  (Tr. at 1853-54, 1865).  On appeal, the Appellate Division found that "the statement was properly received under the admission exception to the hearsay rule because it was inconsistent with defendant's position at trial."  Collins, 301 A.D.2d at 452, 755 N.Y.S.2d at 366 (citing People v. Harris, 148 A.D.2d 469, 469, 538 N.Y.S.2d 621, 622 (2d Dep't 1989)).  The court also noted that the statement "reflected defendant's intent to harm his ultimate victims."  Id.

"[S]tate evidentiary rulings are generally a matter of state law and not subject to habeas review."  Varela v. Marshall, 520 F.

---

established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The AEDPA standard applies to this case since Mr. Collins filed his petition after the Act's effective date.  See Brown, 283 F.3d at 498 n.2.  However, where, as here, the petitioner's claims fail under the less deferential pre-AEDPA standard, there is no need to conduct the AEDPA's more intricate analysis.  Cf. Kruelski v. Connecticut Superior Court for the Judicial District of Danbury, 316 F.3d 103, 106 (2d Cir. 2003) (suggesting, in post-AEDPA cases, that habeas courts should assess first whether state court's ruling was erroneous under the "correct interpretation" of federal law at issue, then whether the ruling was unreasonable).

Supp. 2d 471, 477 (S.D.N.Y. 2007); Martinez v. Artuz, No. 99 Civ. 12280, 2002 WL 1000287, at *4 (S.D.N.Y. May 13, 2002) (noting that hearsay rulings under New York state law are typically not cognizable on federal habeas review). Accordingly, to warrant habeas relief on due process grounds, a petitioner must show that his due process rights were violated by an erroneous evidentiary ruling, meaning "that the error was so pervasive as to have denied him a fundamentally fair trial." Severino v. Phillips, No. 05 Civ. 475, 2008 WL 4067421, at *12 (S.D.N.Y. Aug. 25, 2008) (quoting Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985)).

There is no question that "[o]ut-of-court statements which are offered for the truth of their content constitute hearsay" and are generally inadmissible. People v. Slaughter, 189 A.D.2d 157, 159, 596 N.Y.S.2d 22, 24 (1st Dep't 1993). Under New York law, however, a defendant's "admissions of any inculpatory material fact are always competent evidence against him," notwithstanding the rule against hearsay. People v. Swart, 273 A.D.2d 503, 505, 709 N.Y.S.2d 653, 655 (3d Dep't 2000)(citing Richard T. Farrell, Prince, Richardson on Evidence §§ 8-201, 8-203 (11th ed. 1995)); accord Harris, 148 A.D.2d at 469, 538 N.Y.S.2d at 622 ("Any act or declaration of the accused inconsistent with his innocence is admissible as an admission."). The petitioner's statement to Mr. Duran showed hostility towards the men who attacked his friend and was thus indicative of his state of mind the night of the shootings.

Therefore, as the Appellate Division determined, it was properly admitted against the petitioner as a party admission.[10]

As the petitioner has failed to demonstrate that the trial court erred, he has likewise failed to show any violation of his due process rights. Accordingly, his claim fails.

### 2. Failure to Charge Justification

The petitioner also argues that the court deprived him of a fair trial by refusing to deliver a justification charge to the jury. (Petition at 7; Def. Memo. at 24-34; Collins 12/28/03 Letter at 1-2). The Appellate Division found that a justification charge was unwarranted because the record failed to show that "defendant's alleged belief that someone was using or was about to use deadly physical force against him was reasonable." Collins, 301 A.D.2d at 452-53, 755 N.Y.S.2d at 366. The court also noted that "the evidence clearly establishes that defendant could have retreated from the scene in complete safety." Id. at 453, 755 N.Y.S.2d at 366.

A petitioner must show that he was "erroneously deprived of a

---

[10] Alternatively, the statement was admissible to show the petitioner's state of mind. Where the "mere utterance of [said] statement without regard to its truth, may indicate circumstantially the state of mind of . . . the declarant," the hearsay rule provides no bar to admissibility. People v. Matthews, 16 A.D.3d 135, 137, 791 N.Y.S.2d 24, 26 (1st Dep't 2005) (citing Prince, Richardson on Evidence § 8-106). Here, the truth of Mr. Collin's statement was irrelevant; its relevance lay in what it reflected about his mental state. Thus, it was also admissible to show Mr. Collins' motive and intent.

jury instruction to which he was entitled under state law" before he can viably claim a violation of his due process rights.  <u>Jackson v. Edwards</u>, 404 F.3d 612, 621 (2d Cir. 2005); <u>Davis v. Strack</u>, 270 F.3d 111, 124 (2d Cir. 2001).  Under New York law, the need for self defense can justify the use of physical force against another. "Generally, the force permitted [in self defense] is related to the degree of force reasonably believed necessary to repel various threats."  <u>In re Y.K.</u>, 87 N.Y.2d 430, 433, 639 N.Y.S.2d 1001, 1003 (1996).  Accordingly, a person is entitled to defend himself with non-deadly force when imminently threatened by physical force of an ordinary nature, such as a punch to the face.  N.Y. Penal Law § 35.15(1); <u>see</u> <u>People v. Bradley</u>, 297 A.D.2d 640, 641, 747 N.Y.S.2d 48, 49-50 (2d Dep't 2002).  Similarly, a person may only use deadly force[11] if he reasonably believes that degree of force is necessary for protection of a life.  N.Y. Penal Law § 35.15(2)(a).  Moreover, under most circumstances, the law imposes a duty to retreat before deadly force can be used.  N.Y. Penal Law § 35.15(2)(a).  Thus, when a person "who is confronted with deadly physical force knows he can retreat with complete safety but fails to do so," he can no longer justify his actions as self defense.  <u>Jackson</u>, 404 F.3d at 623.

---

[11] Deadly physical force is "physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." N.Y. Penal Law § 10.00(11).  There is no question that the use of a gun constitutes deadly force.  <u>See</u> <u>People v. Magliato</u>, 68 N.Y.2d 24, 29-30, 505 N.Y.S.2d 836, 839-40 (1986).

A justification charge must be given "if on any reasonable view of the evidence, the fact finder might have decided that defendant's actions were justified." Id. at 622 (quoting People v. Padgett, 60 N.Y.2d 142, 145, 468 N.Y.S.2d 854, 856 (1983)); accord Strack, 270 F.3d at 125.  If, however, "no reasonable view of the evidence would support a finding of the tendered defense, the court is under no obligation to submit the question to the jury." People v. Watts, 57 N.Y.2d 299, 301, 456 N.Y.S.2d 677, 678 (1982); accord People v. Butts, 72 N.Y.2d 746, 750, 536 N.Y.S.2d 730, 733 (1988).  In accessing the evidence, the reviewing court must construe the record "in the light most favorable to the defendant." Id.; see also Holden v. Miller, No. 00 Civ. 0926, 2000 WL 1121551, at *15 (S.D.N.Y. Aug. 8, 2000) (collecting cases showing that "New York courts have repeatedly emphasized" this point).

Here, there is no evidence that Mr. Collins reasonably believed that he was in imminent, life-threatening danger or that he had satisfied his duty to retreat.  Indeed, only one piece of evidence even conceivably supports a justification charge -- the petitioner's statement that he saw a black male with an automatic weapon shooting in the direction of Rockwood Street and Grand Concourse.  (Tr. at 2644).  This alone, however, is insufficient to establish that the petitioner reasonably believed he was in mortal danger.  See, e.g., Watts, 57 N.Y.2d at 302, 456 N.Y.S.2d at 679 (affirming refusal to charge justification when "sole probative evidence" was statement

13

by defendant at time of arrest that someone came after him with a kitchen knife); <u>People v. Matias</u>, 235 A.D.2d 298, 298, 653 N.Y.S.2d 308, 309 (1st Dep't 1997) (affirming refusal to charge justification when only evidence was "defendant's vague statement to the police that the 'older one' was advancing towards him with a knife"). Moreover, even assuming that Mr. Collins did reasonably believe that someone was about to use deadly force against him, he had a duty to retreat.  The petitioner has never even alleged that he attempted to withdraw before resorting to violence although he was standing on an open street corner with presumably many opportunities for escape.  (Tr. at 2644; Def. Memo. at 28-33).

In sum, the record does not reflect the elements of a justification defense, even when viewed in a light most favorable to the petitioner.  The trial court thus properly refused to submit that charge to the jury.

### 3. <u>Corroboration of Accomplice Testimony</u>

Under New York law, "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such an offense."  CPL § 60.22(1).  The petitioner argues there was insufficient corroboration of Mr. Perez's testimony and that this state law violation deprived him of due process of law

under the United States Constitution."[12]    (Petition at 12; Def.
Supp. Memo. at 38-46).   The Appellate Division found that the
petitioner's claim was procedurally defaulted, presumably because
he failed to adhere to New York's contemporaneous objection rule at
trial.   Collins, 301 A.D.2d at 453, 755 N.Y.S.2d at 365.

Federal habeas review is inappropriate when the state court
rests its judgment on a "state law ground that is independent of the
federal question and adequate to support the judgment."   Lambrix v.
Singletary, 520 U.S. 518, 522-23 (1997) (quoting Coleman v.
Thompson, 501 U.S. 722, 729 (1991)).   For a state procedural law
ground to be deemed "adequate" as a matter of federal law, it must
be "'firmly established and regularly followed' by the state in
question."   Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting
Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).   Moreover, even when
a rule is considered to be firmly established and regularly followed
as a general matter, "[i]f the state court 'misapplied' the rule 'in
this case in particular,' then the rule is inadequate to bar federal
review" of the case at hand.   Fong v. Poole, 522 F. Supp. 2d 642,
649 (S.D.N.Y. 2007) (quoting Cotto v. Herbert, 331 F.3d 217, 240 (2d
Cir. 2003)).

There is no doubt that New York's contemporaneous objection
rule is an independent and adequate state law ground of decision.

---

[12] It is undisputed that Mr. Perez was an "accomplice" within
the meaning of the law.

Garvey v. Duncan, 485 F.3d 709, 715-16 (2d Cir. 2007); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).  The question here is thus whether the Appellate Division applied the rule to the petitioner's case in a reasonable, rather than "exorbitant," manner.  See Garvey, 485 F.3d at 714.  If the Appellate Division's application of the rule was proper, the claim is procedurally defaulted.

Pursuant to New York law, a legal issue is only preserved for appeal

> when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.  Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court . . . .

CPL § 470.05(2).  As recently clarified by the Second Circuit,

> New York courts have explained that to preserve a claim of error in the admission of evidence at trial under § 470.05(2) a defendant must make his or her position known to the court.  The purpose of this rule is to apprise the trial judge and the prosecutor of the nature and scope of the matter defendant contests, so that it may be dealt with at that time.  A general objection is not sufficient to preserve an issue since such would not alert the court to defendant's position.   Instead New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error.

Garvey, 485 F.3d at 714 (citations omitted).

During trial, the petitioner never complained about insufficient corroboration of accomplice testimony, even though the trial court explicitly raised this issue with counsel before

instructing the jury.   During this conversation, Justice Cohen advised the parties of his proposed accomplice corroboration charge (Tr. at 2776-80), and asked for input concerning alleged corroborative evidence that the jury could consider (Tr. at 2780-84).   The petitioner's counsel argued that the hearsay statement recounted by Mr. Duran, discussed above, should not be presented to the jury as possible corroborative evidence.   (Tr. at 2783).   He also argued against including the petitioner's statements to the police.   (Tr. at 2784).   However, he never protested that there was generally insufficient evidence to corroborate accomplice testimony. Indeed, such an objection would likely have been without merit, as corroborative evidence need not be substantial if it is truly independent of the accomplice testimony.   See People v. Glasper, 52 N.Y.2d 970, 971, 438 N.Y.S.2d 282, 282 (1981) ("[Corroborative evidence] is sufficient if [it] tends to connect the defendant to the crime so as to reasonably satisfy the jury that the accomplice is telling the truth.").   The record in this case contained several pieces of independent corroborative evidence, including ballistic evidence, the petitioner's statement to Mr. Duran, his admissions to the police, his self-inflicted wound, and testimony of non-accomplice witnesses such as the victims, law enforcement officials, and medical professionals.   (Tr. at 2953-54).

In sum, as no objection was raised at trial concerning the general sufficiency of corroborative evidence, application of the

state rule was reasonable, and the procedural bar constitutes an independent and adequate state ground for the Appellate Division's holding.   The petitioner's claim is therefore procedurally defaulted.

A federal habeas court may still review a procedurally defaulted claim if "the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." Coleman, 501 U.S. at 750; Levine v. Commissioner of Correctional Services, 44 F.3d 121, 126 (2d Cir. 1995); Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991).   Cause for procedural default requires a showing that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).   A petitioner suffers actual prejudice if the outcome of the case would likely have been different absent the alleged constitutional violation.   See Reed v. Ross, 468 U.S. 1, 12 (1984); Trottie v. Mantello, No. 98 Civ. 5581, 1999 WL 187202, at *4 (S.D.N.Y. April 6, 1999).   Alternatively, even if the petitioner is unable to establish cause and prejudice, his claim may be heard if he can show that failure to consider the claim would result in a "fundamental miscarriage of justice." See Coleman, 501 U.S. at 750 (quoting Murray, 477 U.S. at 495-96).   However, relief is only warranted in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually

innocent." Murray, 477 U.S. at 496; accord Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 170 (2d Cir. 2000).

Mr. Collins has not established cause for his failure to comply with New York's contemporaneous objection rule. There is also no showing that failure to consider the claim would result in a fundamental miscarriage of justice. Accordingly, review of this claim is barred.

In addition to being procedurally defaulted, the petitioner's claim is not cognizable in a habeas corpus proceeding. "[A federal] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see also Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); Ayala v. Leonardo, 20 F.3d 83, 91 (2d Cir. 1994). The petitioner does not allege any violation of federal law. Indeed, under federal law,

> A conviction may be sustained on the basis of the testimony of a single accomplice, so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt. Any lack of corroboration goes to the weight of the evidence, not to its sufficiency, and a challenge to the weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal.

United States v. Gordon, 987 F.2d 902, 906 (2d Cir. 1993)(citations

omitted).  Thus, Mr. Collins claim -- even if it were reviewable --
is meritless.

### 4.  Weight of the Evidence

The petitioner asserts that his conviction for first degree
manslaughter was against the weight of the evidence.  (Petition at
8-9; Def. Memo. at 35-38).  The Appellate Division decided this
claim on its merits.  Collins, 301 A.D.2d at 452, 755 N.Y.S.2d at
366.  The court explained that "[i]ssues of credibility were
properly considered by the trier of facts and there is no basis for
disturbing its determinations."  Id.  As recounted above, the
petitioner thereafter declined to "seek leave to appeal the First
Department's rejection of the 'weight of the evidence' claim raised
by appellate counsel."  (Collins 9/28/03 Letter at 2 n.2).

Under federal law, a petitioner must exhaust all available
state court remedies for each claim prior to seeking federal habeas
review.  28 U.S.C. § 2254(b)(1)(A).  Exhaustion requires that the
factual and legal basis for each claim be fairly presented to the
highest available state court.  28 U.S.C. § 2254(c); Daye v.
Attorney General of the State of New York, 696 F.2d 186, 191 (2d
Cir. 1982) (en banc).  Here, as the petitioner explicitly withdrew
his weight of the evidence claim, the Court of Appeals never had an
opportunity to review it.  It is thus unexhausted.

However, a claim may be deemed exhausted by a federal court for
purposes of habeas review if it is clear that the state court would

find the claim defaulted.  Gray v. Netherland, 518 U.S. 152, 161-62 (1996); Spence, 219 F.3d at 170; Bossett v. Walker, 41 F.3d 825, 828-29 (2d Cir. 1994).  That is the case here.  New York law provides for only a single application for direct review.  See Spence, 219 F.3d at 170.[13]  Pursuant to CPL § 440.10(2)(c), a defendant who fails to press an available claim on direct appeal also forfeits his opportunity to raise it on collateral review in state court.  Since the petitioner here decided to withdraw his weight of the evidence claim on appeal, he has no remaining opportunity to bring it on direct or collateral review in state court, and thus it is procedurally barred and not cognizable on habeas review.

As noted above, further review of a procedurally defaulted claim is barred unless the petitioner can show cause for the default and resulting prejudice or that failure to consider the claim would

---

[13]  The Court in Spence relied on New York Court of Appeals Rule 500.10(a) (1999).  219 F.3d at 170.  The rule has since been amended, and criminal leave applications are now addressed in Rule 500.20.  While this section does not specifically state that there may be only one application for appeal, see N.Y. Court of Appeals Rule § 500.20, such a restriction may be inferred.  CPL § 460.10(5) provides a 30-day window for any such application to be filed; this time limit would be meaningless were multiple applications permitted.  Additionally, Rule 500.20(d) states that a request for reargument or reconsideration may not raise any new points, implying that a wholly new request for leave to appeal would be impermissible. See generally Roa v. Portuondo, No. 02 Civ. 6116, 2007 U.S. Dist. LEXIS 74387, at *32-33 (S.D.N.Y. Oct. 5, 2007)(declining to review issue that petitioner had failed to raise on direct appeal); Murray v. Williams, No. 05 Civ. 9438, 2007 WL 430419, at *8 (S.D.N.Y. Feb. 8, 2007)(same); Oquendo v. Senkowski, 452 F. Supp. 2d 359, 368 (S.D.N.Y. 2006) (same).

result in a fundamental miscarriage of justice.   See Coleman, 501
U.S. at 749-50.   Mr. Collins has made no effort to meet either
standard.   Consequently, this Court cannot review his claim.

In addition, like the petitioner's insufficient corroboration
claim, his weight of the evidence argument is a state law claim that
is not cognizable in federal court.   "Unlike a sufficiency of the
evidence claim, which is based upon federal due process principles,
a weight of the evidence claim is an error of state law, for which
habeas review is not available."   Garrett v. Perlman, 438 F. Supp.
2d 467, 470 (S.D.N.Y. 2006)(citation and quotation marks omitted));
accord Williams v. New York, No. 06 Civ. 2475, 2009 WL 281687, at
*4 (S.D.N.Y. Feb. 6, 2009) (citing cases).   Accordingly, if
reviewed, this claim would also be rejected.

### 5.   Insufficient Evidence

The petitioner contends that the evidence adduced to support
his conviction was legally insufficient, thereby depriving him of
constitutional due process. (Petition at 10-11; Def. Supp. Memo.
at 27-37).   Highlighting that Mr. Perez was the only witness to
positively identify him as the gunman, the petitioner argues at
length that the eyewitness testimony of a single "interested
witness" cannot sustain his conviction. (Petition at 10-11; Def.
Supp. Memo. at 31-34).   He also maintains that there was
insufficient evidence of his intent to cause serious physical
injury, an element of the crime of manslaughter. (Def. Supp. Memo.

at 34-36).

The Appellate Division declined to review the petitioner's insufficient evidence claim, deeming it unpreserved. Collins, 301 A.D.2d at 453, 755 N.Y.S.2d at 366. Again, the court apparently based its determination on the grounds that the petitioner failed to adhere to New York's contemporaneous objection rule at trial. Accordingly, as discussed above, if the Appellate Division properly applied the contemporaneous objection rule, the petitioner's claim is procedurally defaulted and likely unreviewable.

This claim presents a closer call than the corroboration claim discussed above. When the prosecution rested its case at trial, the petitioner's counsel objected that the prosecution failed to establish a prima facie case with respect to every count charged, arguing that "the People have failed to make out . . . that my client acted . . . with an intent to cause serious physical injury and acted with depraved indifference to human life." (Tr. at 2746, 2754). Case law supports an argument that this language lacked sufficient specificity to preserve the insufficient evidence claim for appeal and that, therefore, the Appellate Division's finding was reasonable. See, e.g., CPL § 470.05(2) practice commentaries (2009) ("A motion for a trial order of dismissal that fails to identify the specific error in the state's proof will not preserve the error for an appeal."); Green v. Travis, 414 F.3d 288, 294-95 (2d Cir. 2005) ("[A]n objection to a ruling or instruction of a criminal court must

also be made with sufficient specificity to enable the trial court

to respond."); People v. Gray, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173,

175 (1995)(finding that "even where a motion to dismiss for

insufficient evidence was made, the preservation requirement compels

that the argument be 'specifically directed' at the alleged error").

However, the trial court responded to the petitioner's objection by

stating explicitly that "each defendant . . . has an exception"

concerning his objections to the sufficiency of the prosecution's

evidence.  (Tr. at 2747).  The court later reiterated that "the

record should be protected" for purposes of appeal.  (Tr. at 2754).

The trial court thus apparently found the petitioner's objections

on the issue of sufficient evidence to be adequately precise.

Whether or not the petitioner's sufficiency claim is preserved is

ultimately of no importance, however, because the claim fails on the

merits.

The standard for habeas corpus review of insufficient evidence

claims is well established.  There is a "very heavy burden placed

upon a defendant challenging the sufficiency of the evidence

underlying his conviction." Knapp v. Leonardo, 46 F.3d 170, 178 (2d

Cir. 1995) (internal quotation marks and citations omitted).  "The

relevant question is whether, after viewing the evidence in the

light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime beyond a

reasonable doubt." Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d

Cir. 1999) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 401 (1993)) (emphasis omitted).  The Court must "decide whether the record is 'so totally devoid of evidentiary support that a due process issue is raised.'"  <u>Bossett</u>, 41 F.3d at 830 (quoting <u>Mapp v. Warden, New York State Correctional Institution for Women</u>, 531 F.2d 1167, 1173 n.8 (2d Cir. 1976)).

A federal court reviewing a sufficiency of evidence claim does not make an independent determination as to whether the evidence demonstrates guilt beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19 (1979).  Rather, the habeas court "stands in the shoes of the state trial court."  <u>Mallette v. Scully</u>, 752 F.2d 26, 31 (2d Cir. 1984).  In so doing, it must construe the evidence in the light most favorable to the prosecution, and defer to the jury's resolution of any conflicts in the testimony and to its assessment of the credibility of witnesses.  <u>Jackson</u>, 443 U.S. at 319; <u>see also</u> <u>Herrera</u>, 506 U.S. at 401-02 (noting that courts should ask only whether a decision to convict was rational, not whether it was correct).  "[A]s long as any competent evidence went to the fact-finders from which they could infer guilt beyond a reasonable doubt, the conviction will stand."  <u>Martin v. Scully</u>, 748 F. Supp. 159, 164 (S.D.N.Y. 1990) (quoting <u>McShall v. Henderson</u>, 526 F. Supp. 158, 161 (S.D.N.Y. 1981)).

"When it considers the sufficiency of the evidence of a state conviction, 'a federal court must look to state law to determine the

elements of the crime.'"   <u>Fama v. Commissioner of Correctional Services</u>, 235 F.3d 804, 811 (2d Cir. 2000) (quoting <u>Quartararo</u>, 186 F.3d at 97).   Under New York Penal Law § 125.20(1), a person is guilty of first degree manslaughter when he (1) causes a person's death, (2) with an intent to cause serious physical injury to the decedent or to a third person.   A person is guilty of reckless endangerment in the first degree when he (1) "recklessly engages in conduct which creates a grave risk of death to another person" and (2) his actions, under the circumstances, evince a "depraved indifference to human life."   N.Y. Penal Law § 120.25.   "Depraved indifference requires proof that the actor's reckless conduct [was] imminently dangerous and present[ed] a grave risk of death.   This calculus requires an objective assessment of the degree of risk presented by defendant's reckless conduct."   <u>People v. Lynch</u>, 95 N.Y.2d 243, 247, 715 N.Y.S.2d 691, 692 (2000) (quotation marks and citations omitted).[14]

The evidence produced at trial was sufficient for a rational juror to conclude that Mr. Collins was guilty of both of these crimes.   As noted above, his convictions were directly supported by the testimony of Mr. Perez, who testified that he saw the petitioner fire into the crowd.   (Tr. at 2200-05).   To be sure, there were reasons to doubt Mr. Perez's testimony; as the petitioner points

---

[14] The petitioner has seemingly not challenged his conviction for illegally possessing a weapon.   Accordingly, this crime is not included in my analysis.

out, Mr. Perez testified in exchange for immunity, he owned a collection of guns including the ones used in the shooting, he had substantial involvement with illegal drugs, and parts of his testimony were inconsistent.  (Def. Supp. Brief at 28, 31-33). However, a "habeas court must defer to the assessments of the . . . credibility of the witnesses that were made by the jury and may not substitute its view . . . for that of the jury[.]"  Frazier v. New York, 187 F. Supp. 2d 102, 109-10 (S.D.N.Y. 2002) (citing Herrera, 506 U.S. at 401-02).  Here, defense counsel ensured that the jury knew of Mr. Perez's prior bad acts and recognized any inconsistencies in his testimony (Tr. at 2875-79); in addition, the judge instructed the jury to "carefully examine [Mr. Perez's] testimony in light of the promised immunity." (Tr. at 2941-42). Ultimately, the jury was entitled to credit any parts of Mr. Perez's testimony that it deemed reliable.  See United States v. Matthews, 20 F.3d 538, 548 (2d Cir. 1994) ("Where there are conflicts in the testimony, we must defer to the jury's resolution of [them]."); United States v. Projansky, 465 F.2d 123, 136 & n.24 (2d Cir. 1972) (jury was properly instructed to weigh credibility of witness at trial, despite his having admitted to committing perjury before grand jury).

Moreover, as discussed above, Mr. Perez's testimony was corroborated by several other pieces of evidence.  For example, the petitioner's statement to Mr. Duran and his insistence upon bringing

27

weapons to the fight show a prior intent to inflict harm.   In addition, Mr. Collins admitted that he was at the scene of the crime with a gun in anticipation of a fight between Mr. Hernandez and Mr. Gullet, and several witnesses testified that he was armed with a nine millimeter gun.   There was also testimony from several witnesses that the initial gun shots came from the corner of Rockwood Street and Grand Concourse; later, several discharged nine millimeter shells were found in that location.   Finally, Mr. Little was killed by a nine millimeter bullet.

In sum, viewed in a light most advantageous to the prosecution, there was ample evidence upon which a rational trier of fact could have found the essential elements of both crimes beyond a reasonable doubt.   Therefore, even assuming that the petitioner's insufficient evidence claim was properly preserved, it must be denied on its merits.

### 6.   Ineffective Assistance of Trial Counsel

Finally, the petitioner claims that his trial counsel was ineffective because he "inexplicably failed to request a 'missing witness instruction'" when the prosecution failed to call Passion Baker, one of the shooting victims, as a witness.[15]   (Petition at 14-15; Def. Supp. Memo. at 47-54).   The Appellate Division found

---

[15] "A missing witness charge invites the jury to draw an adverse inference against a party that fails to call a witness whose production . . . is peculiarly within [its] power." United States v. Gaskin, 364 F.3d 438, 463 (2d Cir. 2004) (quotation marks omitted) (alterations in original).

that the petitioner was not entitled to a missing witness charge, and his counsel therefore did not err in failing to request such an instruction.  Collins, 301 A.D.2d at 453, 755 N.Y.S.2d at 366.  The court concluded that "[t]he existing record establishes that the defendant  received meaningful representation."[16]  Id.[17]

In order to make out a claim for constitutionally ineffective assistance of counsel, the petitioner must satisfy the "rigorous," "highly demanding" test articulated in Strickland v. Washington, 466 U.S. 668 (1984).  See Pavel v. Hollins, 261 F.3d 210, 216 (2d Cir. 2001) (quoting Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001), and Kimmelman v. Morrison, 477 U.S. 365, 382 (1986)).  He must first establish that his counsel's performance was deficient, meaning that it "fell below an objective standard of reasonableness" given the facts and circumstances of the particular case.  United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002) (quoting United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001)); accord Strickland, 466 U.S. at 687, 690.  Second, the petitioner must "affirmatively prove"

---

[16] The Appellate Division cited only New York state cases and thus apparently analyzed the petitioner's ineffective counsel claim under state law.  However, since it is easier for a defendant to succeed on an ineffective counsel claim under New York State law than under federal law, see People v. Caban, 5 N.Y.3d 143, 156, 800 N.Y.S.2d 70, 79 (2005), the Appellate Division presumably implicitly rejected the petitioner's ineffective counsel claim under federal law as well.

[17] Thereafter, the trial court also denied the petitioner's § 440.10 motion, which was based on different ineffective assistance of counsel grounds.  Collins, 2007 WL 1470388.

that his attorney's deficient performance prejudiced the outcome of the case.  Strickland, 466 U.S. at 687, 693.  Although Strickland establishes a two-part test, a court need not address both prongs. Rather, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  Strickland, 466 U.S. at 697.

I need not address the trial counsel's performance here because, even assuming that his counsel erred in failed to request a missing witness charge, the petitioner has utterly failed to show resulting prejudice.  Although Mr. Collins faults his counsel for failing to request a missing witness charge, he fails to show that the ultimate outcome of his case would have been different had counsel made such a request.  Indeed, the Appellate Division found that Mr. Collins was not entitled to a missing witness charge, indicating that any such request would have been rejected in this case.  Moreover, during summation, counsel for the petitioner's co-defendant reminded the jury that Ms. Baker did not testify and suggested that this should generally raise doubts about the prosecution's case.  (Tr. at 2849).  In sum, the record here gives no indication that counsel's alleged errors were prejudicial to the point of "depriv[ing] the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 687.  Accordingly, the petitioner's ineffective assistance of counsel claim fails.

<u>Conclusion</u>

For the reasons above, I recommend that Mr. Collins' petition for a writ of habeas corpus be denied. Pursuant to 28 U.S.C § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objection shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable P. Kevin Castel, Room 2260, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         May 22, 2009

Copies mailed this date to:

Peter Collins
99-A-2393
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929

31

T. Charles Won, Esq.
Allen H. Saperstein, Esq.
Assistant District Attorneys
198 East 161st Street
Bronx, New York 10451